IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DONALD CARDWELL on behalf of himself and similarly-situated employees, | : : : : |
| Plaintiffs, | : CIVIL ACTION : |
| v. | : No. 08-cv-5075 : |
| STRYDEN, INC., | : : |
| Defendant. | : |

**MEMORANDUM and ORDER**

Joyner, J.                                                February 12, 2009

Before the Court is Defendant, Stryden, Inc.'s, Motion to Dismiss the Amended Complaint (Doc. No. 8) and Plaintiffs' Response in Opposition (Doc. No. 10).  For the reasons set forth in this Memorandum, we will deny Defendant's Motion to Dismiss the Amended Complaint.

Background[1]

In October of 2006, lead Plaintiff, Mr. Donald Cardwell, and similarly-situated opt-in plaintiffs, Messers. Vincent Cesario, Donald Delisi, Philip Green, Joseph Lafferty, Philip Miller, Edward Ryan, and Andrew Wasnick, were working as shuttle drivers for Tandem, a company which had been awarded a contract to staff the National Car Rental facilities in the Philadelphia area.  All

---

[1] In line with a Fed.R.Civ.P 12(b)(6) Motion to Dismiss, all factual allegations are viewed in the light most favorable to the non-moving party. Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008) (citations omitted).

1

the employees, except for plaintiff Miller, had originally been hired by National Car Rental and became employees of Tandem when it was awarded the contract to staff the facilities. All plaintiffs are over 60 years of age and at all times maintained a satisfactory job performance rating in their positions.

On or around the end of October 2006, Defendant Stryden ("Stryden") was awarded the National Car Rental contract. Plaintiffs were then informed that Tandem was ceasing operations on October 31, 2006, and that Stryden would be their new employer as of November 1, 2006. Defendant Stryden asked each plaintiff to complete a job application and provide medical information prior to assuming their duties with Stryden. All plaintiffs complied with the requests and applied to the same position that they had held prior to Stryden's takeover; no interviews or written or oral tests were administered at this time. Each plaintiff was then told on or around October 31, 2006, that their "services were not needed anymore." Plaintiffs were then replaced by younger drivers on November 1, 2006. In December 2006, each plaintiff then completed a "Selection Questionnaire (Hiring, Promotion, Transfer, etc.)" with the Equal Employment Opportunity Commission ("EEOC"). A Charge of Discrimination was then completed by the EEOC, listing Mr. Cardwell as the charging party and all other plaintiffs by name in the description of the discriminatory action. The charge was dual-filed with the

Pennsylvania Human Relations Commission ("PHRC").  The EEOC then investigated the charges and requested documents from Stryden pertaining to all plaintiffs.  On July 25, 2008, the EEOC issued a Notice of Right to Sue Letter.  Plaintiffs then filed a multiple plaintiff joint action with this Court alleging two counts: (I) Age Discrimination in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § § 623(a)(1) and 623(a)(2); and (II) Age Discrimination in violation of the Pennsylvania Human Relations Act ("PHRA").  On December 11, 2008, Stryden filed a Partial Motion to Dismiss Plaintiffs' Complaint on the basis of the fact that Plaintiffs Cesario, Delisi, Green, Lafferty, Miller, Ryan, and Wasnick did not file full administrative claims with the EEOC.  On December 19, 2008, plaintiffs filed an Amended Complaint, a representative action naming Mr. Cardwell lead plaintiff.  Written consents were also filed for the opt-in plaintiffs on December 15 or 18, 2008, pursuant to Section 16(b) of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b).  On January 5, 2009, Stryden moved to dismiss plaintiffs' Amended Complaint and plaintiffs responded on January 19, 2009.

## Standard

In response to a pleading, under Federal Rule of Civil Procedure 12(b)(6), a Defendant may assert by motion that the Plaintiff's complaint "[fails] to state a claim upon which relief

can be granted."  In analyzing a Rule 12(b)(6) motion to dismiss, we "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief."  Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008) (citations omitted).  "To survive a motion to dismiss, a civil plaintiff must allege facts that 'raise a right to relief above the speculative level . . . .'"  Id. at 232 (quoting Bell Atl. Corp. v. Twombley, 127 S. Ct. 1955, 1965, 167 L. Ed. 929, 940 (2007)).  In other words, the plaintiff must provide "enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element[s]" of a particular cause of action.  Id. at 234.  In ruling on a Rule 12(b)(6) motion to dismiss, the court may consider documents "integral to or explicitly relied upon in the complaint."  In re Rockefeller Sec. Lit., 184 F.3d 280, 287 (3d Cir. 1999).

### Discussion

In its Motion to Dismiss the Amended Complaint, Defendant argues that:

(1) Opt-in Plaintiffs, Messers. Vincent Cesario, Donald Delisi, Philip Green, Joseph Lafferty, Philip Miller, Edward Ryan, and Andrew Wasnick (herein after "opt-in plaintiffs"), did not timely file EEOC charges and are therefore barred from bringing

4

individual ADEA claims; and

(2) Opt-in plaintiffs filed their opt-in consent notices after the statute of limitations had expired and so, as the statute of limitations was not tolled by Plaintiffs' Original Complaint, they are not proper plaintiffs to this action.

We will address each argument in turn.

## I. EEOC Filing of the Opt-in Plaintiffs

Defendant contends that the ADEA requires that a grievant bring suit in federal court only after first resorting to administrative remedies, pursuant to 29 U.S.C. §626(d).  Oscar Mayer & Co. v. Evans, 441 U.S. 750, 758 (1879).  Defendant argues that since plaintiffs included in the Amended Complaint did not file a formal "charge" with the Equal Employment Opportunity Commission (EEOC) or another administrative agency, they are now unable to be proper plaintiffs in the current action under the ADEA.  Plaintiffs, however, contend that the opt-in plaintiffs timely completed intake questionnaires, or "Selection Questionnaires," filed with the EEOC that should be deemed "charges" within the meaning of the statute.  See 29 C.F.R. §1626.8(b); Fed. Express Corp. V. Holowecki, 128 S.Ct. 1147 (2008).  Additionally, plaintiffs argue that even if the questionnaires are deemed not to be charges, they are proper plaintiffs to the action because the named plaintiff in the current collective action, Mr. Cardwell, satisfied the charge-

5

filing obligation of all members (i.e., opt-in plaintiffs were allowed to "piggyback" on the named plaintiff).  See Whalen v. W.R. Grace & Co., 56 F.3d 504 (3d Cir. 1995).

The Supreme Court has held that intake questionnaires submitted to the EEOC can be considered "charges" for the purposes of the ADEA.  Holowecki, 128 S.Ct. at 1160.  While not all questionnaires will qualify as such, the Court looked at the details of the questionnaires submitted in Holowecki to determine whether they qualified as "charges."  Id.  These questionnaires, like the ones in the present action, were in writing, named the respondent, and gave a description of the discriminatory acts that allegedly took place against a class of persons – thereby meeting the standard requirements explicitly set out by the ADEA.  See 29 C.F.R. §1626.8(a) and (b).[2]  In determining whether a questionnaire was actually a "charge," the Supreme Court in Holowecki further considered the EEOC's articulated standard for a "charge" – that the filing be "reasonably construed as a request for the agency to take action to protect [the employee's]

---

[2] "Section 1626.8(a) identifies five pieces of information a "charge should contain": (1)-(2) the names, addresses, and telephone numbers of the person making the charge and the charged entity; (3) a statement of facts describing the alleged discriminatory act; (4) the number of employees of the charged employer; and (5) a statement indicating whether the charging party has initiated state proceedings. The next subsection, § 1626.8(b), however, seems to qualify these requirements by stating that a charge is 'sufficient' if it meets the requirements of § 1626.6--i.e., if it is 'in writing and . . . name[s] the prospective respondent and . . . generally allege[s] the discriminatory act(s).'"  Holowecki, 128 S. Ct. at 1154.

rights or settle a dispute between employer and employee." Id. at 1157-58.  The Supreme Court firmly stated that, "[d]ocuments filed by an employee with the EEOC should be construed, to the extent consistent with permissible rules of interpretation, to protect the employee's rights and statutory remedies." Id. at 1160.  In the present instance, opt-in plaintiffs have indeed pled and supported that they filed standard intake questionnaires meeting the ADEA standards and that these questionnaires prompted remedial action by the EEOC, i.e. the EEOC followed up with Stryden concerning *all* opt-in plaintiffs.  As this is a motion to dismiss, and this Court must construe all factual determinations in light of the non-moving party, we find that the plaintiffs have adequately pled that they filed "charges" with the EEOC and, therefore, we decline to dismiss the action on these grounds.

Additionally, it should be noted that even if the questionnaires were not "charges" for the purposes of the ADEA action, the opt-in plaintiffs would continue to be parties in interest in this case.  The named plaintiff in this action has clearly filed a charge with the EEOC (Complaint, Exh. A), and timely filed an action in this Court.  As stated by the defendant in its brief, "[p]iggybacking is available in an ADEA collective action, thus enabling proposed opt-in plaintiffs who failed to file administrative claims to piggyback their claims onto the lead plaintiff, provided that the relied upon administrative

charge was valid and individual claims of the filing and non-filing plaintiff arise out of similar alleged discriminatory treatment." Def. Mot. to Dismiss, Memo., 5 (citing Communications Workers of Am., Local 1033 v. N.J. Dep't of Pers., 282 F.3d 213, 217 (3d Cir. 2002); Whalen, 56 F.3d at 506-07). This Court recognizes that "piggybacking" in an ADEA action does, in fact, allow for plaintiffs that have not filed timely claims to file with a named plaintiff who has fulfilled the filing obligations and whose "charge" has given the employer notice of class-based discrimination allegations. Lusardi v. Lechner, 855 F.2d 1062, 1077-78 (3d Cir. 1988); Whalen, 56 F.3d at 506-07. Plaintiff Cardwell clearly fulfills this requirement. Hence, opt-in plaintiffs have adequately pled both that their questionnaires were "charges" under the ADEA and that, even if they had not been deemed charges, that their claims would be "piggybacked" onto the properly filed "charge" of the named, lead plaintiff Cardwell. This Court declines to dismiss the opt-in plaintiffs for failure to file "charges" for administrative remedy.

**II.  Consent Notice Statute of Limitations**

Defendant argues that opt-in plaintiffs filed their consents to opt-in lead plaintiff's representative action after the statute of limitations had run, i.e. over 90 days after receipt of the right to sue letter. Defendant contends that as the

Original Complaint was not a collective action, but rather a joint suit with eight (8) plaintiffs, the opt-in consents filed on Dec. 15 or 18, 2008, were filed approximately 46 days after the expiration of the statute of limitations on the filing period and were not tolled by the Original Complaint.[3]  Defendant concedes the lead plaintiff Cardwell filed his action within 90 days of receipt of the right to sue letter, making his claim timely.  Opt-in plaintiffs argue that the Original Complaint was representative of the class and, hence, the statute of limitations was tolled when the original "representative" claim was filed.

The Third Circuit contemplated this issue in Sperling v. Hoffman La-Roche, 24 F.3d 463 (3d Cir. 1994).  Multiple plaintiffs in Hoffman La-Roche filed their opt-in consents after the expiration of a two year statute of limitation on individual actions on non-willful ADEA claims. The Court ultimately concluded, following analysis of the provisions included and excluded from the ADEA, that a representative action brought under "ADEA is commenced on behalf of all consenting class

---

[3]For this proposition, defendant cites to Ruehl v. Viacom, 500 F.3d 375 (3d Cir. 2007).  The plaintiff in Ruehl had originally opted-in to two separate ADEA subclasses that were later decertified, leading to the dismissal of both claims.  Ruehl then, still without having filed his own charge with the EEOC, attempted to file a separate ADEA action.  The Third Circuit held that he could not "piggyback" on anyone else's claim because all the other claims had been dismissed.  The specific holding read: "we hold that the single filing rule is not available to former members of a collective action that is decertified because the plaintiffs are not 'similarly situated.'" Id. at 390.  This situation is clearly distinct from the instant circumstance.

9

members when the original representative complaint is filed."
Hoffman, 24 F.3d at 472.  Hence, the Court determined that the
opt-in plaintiffs were proper plaintiffs, even though they had
filed opt-in consents after the relevant statute of limitations
had expired.  The Court specifically held that

> [w]hen filed within the statute of limitations, the
> original representative complaint, as long as it
> shows on its face its representative nature, tolls
> the running of the statute of limitations. It
> provides an employer reasonable notice of the claim
> for class relief.  When a complaint clearly
> indicates the claim's representative nature, the
> employer is put on notice that it faces a broader
> and potentially more serious problem than an
> individual action would create.

Id.  In their decision, the Court listed with approval a decision from the Seventh Circuit, Anderson v. Montgomery Ward & Co., 852 F.2d 1008, 1018-19 (7th Cir. 1988), a case starkly similar to the one before us.[4]  Hence, we also look to Anderson in the instant case.  The Court in Anderson found that in ADEA actions, like in Title VII actions, the "plaintiffs who have not timely filed a

---

[4] The relevant facts of Anderson v. Montgomery Ward, 852 F.2d 1008 (7th Cir. 1988), are as follows: Multiple plaintiffs filed a lawsuit styled as a multiple plaintiff joint action, not a "representative action."  Ultimately, the district court allowed plaintiffs to amend their Complaint as a representative action, allowing those plaintiffs who had not filed timely charges with an administrative agency to "piggyback" on the timely charges of the other plaintiffs.  The defendant then challenged the Amended Complaint, on multiple grounds, including the expiration of the statute of limitations of the written consents for the opt-in plaintiffs, as they were filed years after the Original Complaint and the original administrative agency filing.  The Seventh Circuit affirmed the district court's actions and allowed the Amended Complaint to move forward as a representative action with all opt-in plaintiffs.

charge can rely on the timely charge of another plaintiff in a class action or in a multiple plaintiff joint action." Id. at 1017-18.  In fact, the Court noted that an ADEA representative action "more closely resembles a multiple plaintiff joint action than it resembles a class action."  Id.  Finally, the Court held that,

> [b]ecause Title VII case law does not distinguish between multiple plaintiff joint actions and class actions, and since there is so little difference between an ADEA representative action and a multiple plaintiff joint action, we see no valid reason to distinguish between the two types of actions for purposes of the ADEA charge-filing requirement.

Id. at 1018.  We agree.

Therefore, in line with Hoffman La-Roche, a Original Complaint, though a multiple plaintiff joint action, can be treated as a representative claim tolling the statute of limitations if the Original Complaint shows its representative nature and provides the employer with reasonable notice.  In this instance, the "Charge of Discrimination," Exh. A to the Original Complaint, lists Mr. Cardwell as the primary charger and all other plaintiffs in the description of discriminatory acts.  The Original Complaint then listed each plaintiff by name, with Mr. Cardwell appearing first, and specifically alleged a pattern of age discrimination by the employer.  Hence, the employer was clearly on notice, following both the EEOC investigation and the Complaint, that the claim was "potentially more serious than an

11

individual action would create." <u>Hoffman</u>, 24 F.3d at 472.  We decline to dismiss the Amended Complaint because the multiple plaintiff joint action, in this instance, acted as a representative action, tolling the statute of limitations for the opt-in plaintiffs.  An appropriate Order follows.

```
         IN THE UNITED STATES DISTRICT COURT
       FOR THE EASTERN DISTRICT OF PENNSYLVANIA


DONALD CARDWELL on behalf of    :
himself and similarly-situated  :
employees,                      :
                                :
          Plaintiffs,            :    CIVIL ACTION
                                :
     v.                         :    No. 08-cv-5075
                                :
STRYDEN, INC.,                  :
                                :
          Defendant.            :
```

## ORDER

AND NOW, this    12th    day of February,   2009, upon consideration of Defendant's Motion to Dismiss the Amended Complaint (Doc. No. 8) and Plaintiff's Response in Opposition (Doc. No. 10), and for the reasons set forth in the attached Memorandum, it is hereby ORDERED that the Motion is DENIED.


                              BY THE COURT:


                              s/J. Curtis Joyner
                              J. CURTIS JOYNER, J.